# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINISTRY OF DEFENSE AND SUPPORT FOR THE ARMED FORCES OF THE ISLAMIC REPUBLIC OF IRAN,<br><br>               Petitioner/Plaintiff,<br><br>vs.<br><br>CUBIC DEFENSE SYSTEMS, INC.,<br><br>               Respondent/Defendant,<br><br>and<br><br>JENNY RUBIN, et al.; FRANCE RAFII; and DEBORAH PETERSON et al.,<br><br>               Lien Claimants. | CASE NO. 98-CV-1165-B (DHB)<br><br>ORDER GRANTING PETITIONER'S MOTIONS FOR PREJUDGMENT INTEREST AND ATTORNEY'S FEES<br><br>[Doc. Nos. 242 & 244] |

    The Ninth Circuit Court of Appeals remanded this international arbitration case to this Court to consider the motions of the Ministry of Defense and Support for the Armed Forces of Islamic Republic of Iran ("MOD") for prejudgment interest and attorney's fees. 665 F.3d 1091 (9th Cir. 2011). With the consent of the parties, the under-signed heard the motions on behalf of the Honorable Rudi M. Brewster. The hearing was held on September 24, 2012. For the reasons stated below, the Court grants MOD's motion for post-arbitration award, prejudgment interest at a rate of 4.966% from May 5, 1997 to August 10, 1999 for a total of $316,007.02, which accrues postjudgment interest of $42.99 per diem beginning August 10, 1999. The Court also grants MOD's motion for attorney's fees incurred to confirm the arbitration award in the amount of $131,083.50.

## Background

In 1977, Cubic Defense Systems, Inc.'s corporate predecessor agreed to sell to Iran and service an air combat maneuvering range. The 1979 Iranian Revolution disrupted the performance of the contracts. The parties agreed to discontinue the contracts, and Cubic later sold the equipment to Canada.

In 1991, after Cubic failed to give an accounting, MOD filed an arbitration claim for breach of contract with the International Chamber of Commerce ("ICC").[1] On May 5, 1997, the ICC awarded MOD $2,808.519.00 plus 12% pre-award interest and half the arbitration costs. In August 1997 and again in December 1997, MOD sent demand letters to Cubic but Cubic ignored them. Amirmoezi Decl. ¶¶ 4-9 & Exs. 1-2.

In 1998, MOD filed a petition in this Court seeking confirmation of the ICC award. Cubic argued the award was invalid because the ICC exceeded the scope of the submission to arbitration, ignored the contract terms, and denied Cubic a meaningful opportunity to present its case. The Court rejected Cubic's arguments and confirmed the ICC award. 29 F. Supp. 2d 1168, 1172-74 (S.D. Cal. 1998). The clerk entered the Cubic Judgment on August 10, 1999.

Shortly thereafter, MOD asked the Court to award post-arbitration award, prejudgment interest and attorney's fees based on Cubic's failure to comply with the ICC award. The Court denied both motions on the ground that such compensation was not available in international arbitration cases.

Over the years, the United States imposed various financial and trade sanctions on the Republic of Iran. Cubic relies on two. First, in 1995, President Clinton increased the sanctions by prohibiting certain transactions related to petroleum, goods, and technology, which prompted the Department of Treasury to amend the Iranian Transactions Regulations. Executive Order 12957, 60 Fed. Reg. 14615 (Mar. 15, 1995); Executive Order 12959, 60 Fed. Reg. 24757 (May 6, 1995); 60 Fed. Reg. 40881 (Aug. 10, 1995); 60

---

[1] In the intervening years, MOD sought relief from the Iran–United States Claims Tribunal and urged Cubic to settle the dispute informally. Amirmoezi Decl. ¶¶ 4-6.

Fed Reg. 47061 (Sept. 11, 1995). Second, in 2007, the Department of State added the MOD to the list of entities designated as proliferators or supporters of weapons of mass destruction. 72 Fed. Reg. 71991 (Dec. 19, 2007); *see* Executive Order 13382, 70 Fed. Reg. 38567 (June 28, 2005). That designation operated to block any and all of the MOD's property and interests in property in the United States effective October 25, 2007.

Following lengthy appeals by Lien Claimants on other legal issues, in 2011, the Ninth Circuit returned to the arbitration issues. Cubic did not raise the procedural objections to the ICC award, but instead argued that confirmation in Iran's favor was contrary to public policy. The Ninth Circuit requested an amicus brief from the United States. The Departments of Treasury and State filed a brief that explained the financial sanctions regulations and supported confirmation of the arbitration award. Kerekes Decl. Ex. 4 at 23-31. Specifically, the United States clarified that most of the early regulations contained a general license that permitted Cubic to pay the arbitration award, but that even the harsher regulations provided for a specific license to deposit funds in Iran's name into a blocked account. *Id.* (citations omitted).

On December 15, 2011, the Ninth Circuit rejected Cubic's position and affirmed the district court's order confirming the ICC award in MOD's favor. 665 F.3d at 1095-1100. The Circuit also reversed and remanded for consideration, in the district court's discretion, whether to grant MOD's requests for post-award, prejudgment interest and attorney's fees. *Id.* at 1102-04.

## Discussion

I. Motion for Post-Arbitration Award, Prejudgment Interest

    A. Discretion to Award Prejudgment Interest

MOD seeks prejudgment interest from the date of the final arbitration award (May 5, 1997) to the date this Court entered the Cubic Judgment (August 10, 1999).

The Ninth Circuit held that the district court has authority to allow post-award, prejudgment interest because otherwise Cubic, "the losing party in the arbitration has an incentive to withhold payment." *Id.* at 1103.

The Supreme Court favors such awards: "we have repeatedly stated that prejudgment interest is an element of plaintiff's complete compensation." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989); *accord GM Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983); *Jacobs v. United States*, 290 U.S. 13, 17 (1933); *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte, GmbH*, 141 F.3d 1434, 1447 (11th Cir. 1998) ("absent any reason to the contrary, it should normally be awarded when damages have been liquidated by an international arbitral award"); *Golden State Transit Corp. v. L.A.*, 773 F. Supp. 204, 210-12 (C.D. Cal. 1991) (collecting Ninth Circuit cases); *In re Oracle Sec. Litig.*, 132 F.R.D. 538, 547 (N.D. Cal. 1990) (noting presumption that federal claims favor award of prejudgment interest against loser to eliminate penalty for delay).

"Awards of prejudgment interest are governed by considerations of fairness." *United States v. Cal. State Bd. of Equalization*, 650 F.2d 1127, 1132 (9th Cir. 1981); *Blau v. Lehman*, 368 U.S. 403, 414 (1962) ("It is denied when its exaction would be inequitable."); John Y. Gotanda, Awarding Interest in International Arbitration, 90 Am. J. Int'l L. 40, 40-41 (1996) (arguing that post-award interest is essential component of complete relief in lengthy, complex international arbitration cases); *see generally Osterneck*, 489 U.S. at 991 (identifying equitable factors). It "compensates the injured party for the loss of the use of money he otherwise would have had" and avoids the unfairness of allowing the debtor to use money when it should have been in the hands of the victor. *Frank Music Corp. v. MGM, Inc.*, 886 F.2d 1545, 1550 (9th Cir. 1989); *accord TMTV, Corp. v. Mass Prods, Inc.*, 645 F.3d 464, 474 (1st Cir. 2011); *Fishman v. Wirtz*, 807 F.2d 520, 583-84 (7th Cir. 1986); *Waterside Ocean Navigation Co., Inc. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984).

Cubic first argues it should not be "punished" because Iran is a "rogue" state and a sponsor of terrorism. This argument fails because prejudgment interest is not punitive. *W. Pac. Fisheries v. S.S. President Grant*, 730 F.2d 1280, 1288 (9th Cir. 1984); *Indus. Risk*, 141 F.3d at 1446-47.

Cubic next accuses MOD of delaying one year before filing the petition to confirm

the ICC award. Conversely, the rules did not permit Cubic to move to vacate the arbitration award until MOD filed its petition with the district court.

The record does not support a finding that MOD unnecessarily delayed filing its petition in federal court. By contrast, the record demonstrates that Cubic showed no interest in cooperating during the relevant time period between May 1997 and August 1999. After the ICC announced its final decision, Cubic ignored two written requests for payment. Cubic offers no explanation for its refusal to communicate with MOD during that time.

Cubic's assertion that it should not pay prejudgment interest because it had credible grounds to challenge the ICC award falls flat. On appeal, when Cubic had a chance to vindicate its reasons for failing to honor its contractual obligation to abide by the arbitrator's ruling to pay MOD $2.8 million, Cubic abandoned its arguments that the arbitration proceedings were flawed, and instead changed its strategy to focus on new issues that were not related to the validity of the arbitration proceeding or the performance of the contracts. Cubic's fluctuating position suggests an attempt to delay paying any money to MOD rather than the presence of a legal reason to ignore a valid arbitration award.

In this motion, Cubic once again changes course. Cubic now argues that it was impossible to pay the arbitration award until it obtained a license from the Department of Treasury, therefore prejudgment interest should not accrue.

This argument also lacks merit. As set forth in the Ninth Circuit's opinion, "payment is subject to licensing rather than barred absolutely." 665 F.3d at 1099; *id.* at 1100 (Cubic made "no showing that the judgment is unpayable"). The Ninth Circuit held that Cubic could have paid the arbitration award under a general license during certain time periods, and even the newer, stricter regulations allowed Cubic to obtain a specific license to deposit the funds into a blocked account. *Id.* at 1098-1100. The United States Supreme Court interpreted the regulations in this same manner. *MOD v. Elahi*, 556 U.S. 366, 377 (2009). Consequently, the regulations do not excuse Cubic retention of $2.8 million that

- 5 -

98CV1165

the ICC ordered it to return to the MOD.

In sum, the Court concludes that granting MOD's request satisfies the remedial purpose of an award of prejudgment interest. *Osterneck*, 489 U.S. at 175; *Frank Music*, 886 F.2d at 1550.

### B. Interest Rate

The Court has discretion to set the interest rate. *TMTV*, 645 F.3d at 475; *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986) (in federal question cases, the State interest rate does not apply). The Ninth Circuit holds that "[t]he award *should* be based on the fifty-two week Treasury bill rate," which is the rate governing postjudgment interest under 28 U.S.C. § 1961, "*unless* the district court concludes that the equities demand a different rate." *Frank Music*, 886 F.2d at 1552 (emphasis added); *Blanton v. Anzalone*, 813 F.2d 1574, 1576 (9th Cir. 1987) ("the court may be guided by the rate set out in 28 U.S.C. § 1961," but it is not limited to it); *W. Pac. Fisheries*, 730 F.2d at 1288.

The Court discerns no compelling reason to adopt an interest rate different than the guideline set in the postjudgment interest statute. *Frank Music*, 886 F.2d at 1552; *Blanton*, 813 F.2d at 1576. When the parties calculated the postjudgment interest, they agreed to a rate of 4.966%. The Court adopts that rate. Accordingly, the post-arbitration award, prejudgment interest totals $316,007.02. Kerekes Supp. Decl. ¶ 4 & Ex. 9.

### C. Date of Accrual of Postjudgment Interest on Prejudgment Interest Award

MOD next asks the Court to treat the award of prejudgment interest as if it had been part of the original 1999 Cubic Judgment. Under this theory, the additional $316,007.02 award of prejudgment interest would earn *postjudgment* interest from August 10, 1999 until the date of payment. 28 U.S.C. § 1961 (postjudgment interest is mandatory). Postjudgment interest on a back-dated award would exceed $275,000.00. Kerekes Supp. Decl. ¶ 5.

MOD argues this case is analogous to well-established principles of equity that were first established in jury cases. "[I]f a plaintiff wins a jury verdict, the trial court enters a judgment n.o.v. for defendant, and the appellate court reverses and remands with instructions to enter judgment on the original verdict, then postjudgment interest runs from

1  the entry of the original judgment, not from entry of the new judgment on remand."
2  *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1156 (9th Cir. 1988) (per curiam)
3  (citing *Turner v. Japan Lines Ltd.*, 702 F.2d 752, 754-57 (9th Cir. 1983) (per curiam)).
4  This equitable rule allows postjudgment interest to run from the initial ascertainment of
5  damages so as not to penalize the victor for delay in the eventual entry of the final
6  judgment. *Id.* at 1156 & n.4 (citing *Turner*, 702 F.2d at 756). The Ninth Circuit has
7  applied this principle to arbitration cases when the appellate court reinstates an arbitration
8  award that had been overturned by the district court. *AT&T Co. v. United Computer Sys.,*
9  *Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996); *Northrop*, 842 F.2d at 1156-57.

In opposition, Cubic argues the Court should follow the general rule that postjudgment interest "should be calculated from the date of the entry of the judgment in which the money damages, upon which interest is to be computed, *were in fact awarded.*" *United States v. Hougham*, 301 F.2d 133, 135 (9th Cir. 1962) (emphasis added); *accord James B. Lansing Sound, Inc. v. Nat'l Union Fire Ins. Co.*, 801 F.2d 1560, 1570-71 (9th Cir. 1986). Under Cubic's theory, this Court awarded prejudgment interest in this order and postjudgment interest accrues from this day forward.

The instant case is unique because the original judgment awarded MOD over $2.8 million in compensatory damages but zero dollars for prejudgment interest. The facts fall within the two parameters of *Northrop* and *Hougham* and the Court finds a closer analogy in cases when the appellate court modifies the amount of compensation awarded. *Dunn v. HOVIC*, 13 F.3d 58, 60-62 (3d Cir. 1993); *Cordero v. De Jesus-Mendez*, 922 F.2d 11, 16-17 (1st Cir. 1990) ("Where an original judgment is upheld for the most part but modified on remand, post-judgment interest should accrue from the date of the first judgment."); *Perkins v. Standard Oil Co. of Cal.*, 487 F.2d 672, 676 (9th Cir. 1973).

The Court's analysis is consistent with the policy to ensure full compensation to the successful party by asking "who should bear the cost resulting from the loss of the use of

the money" when an order should have been entered at an earlier date.[2] *Turner*, 702 F.2d at 756-57 (citation omitted); *AT&T*, 98 F.3d at 1210-11 ("equitable principles favor calculating the interest in a manner that more fully compensates the prevailing party"); *Cordero*, 922 F.2d at 18 ("Calculating interest from the date of the second judgment would penalize appellees for the trial judge's error."); *Perkins*, 487 F.2d at 676. Here, MOD's damages were sufficiently ascertained in 1999 and Cubic's liability remains undisturbed. *Tinsley v. Sea-Land Corp.*, 979 F.2d 1382, 1383 (9th Cir. 1992) (per curiam); *see Planned Parenthood of the Columbia/Willamette Inc. v. Am. Coalition of Life Activists*, 518 F.3d 1013, 1021 (9th Cir. 2008). As stated by the Ninth Circuit, "interest should run from the date of entry of the *original* judgment because that is the date on which the *correct* judgment *should have been* entered." *Perkins*, 487 F.2d at 676 (emphasis added).

Had the district court awarded prejudgment interest in 1999, postjudgment interest would have been mandatory. 28 U.S.C. § 1961; *Perkins*, 487 F.2d at 675 (postjudgment interest is "mandatory without regard to the elements of which that judgment is composed"); *accord Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, (6th Cir. 2001) (collecting cases).

Applying these principles to the facts of this case, the Court awards MOD postjudgment interest of 4.966% on the $316,007.02 award from August 10, 1999 to the date of payment at a daily rate of $42.99. Kerekes Supp. Decl. ¶ 5.

II. Motion for Attorney's Fees

In the second motion, MOD seeks reimbursement for the attorney's fees it expended to enforce the arbitration award in this Court, on appeal to the Ninth Circuit, and during these postjudgment motions.

The Ninth Circuit held that this Court has discretion to award legal fees if it finds

---

[2] The cases deal with original judgments and new judgments entered on remand. Here, the 1999 Cubic Judgment was affirmed. 665 F.3d 1091. Cubic paid $4 million in mandatory postjudgment interest on the underlying arbitration award. Fed. R. App. P. 37(a); *see* Docket No. 202. At issue is the postjudgment order addressing prejudgment interest (and attorney's fees). Nonetheless, the same principles apply to a final appealable order that is subsequently reversed or modified by the appellate court.

that Cubic wilfully failed to abide by the final arbitration award. 665 F.3d at 1104. The Ninth Circuit articulated the standard as follows: "[A] court may award fees if it finds that the losing party acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1192 (9th Cir. 1996) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (internal quotation marks omitted)). "An unjustified refusal to abide by an arbitrator's award may equate an act taken in bad faith, vexatiously or for oppressive reasons." *Id.*; *accord Vaughan v. Atkinson*, 369 U.S. 527, 530-31 & n.3 (1962) (awarding fees when defendant was "callous," failed to investigate, remained silent, and forced plaintiff to hire attorney to "get what was plainly owed him"); *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) (defining conduct "tantamount to bad faith" as "including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."). Further, the district court has authority to award fees related to a frivolous appeal "when the result is obvious or the arguments of error advanced are wholly without merit." *Wellman v. Writers Guild of Am. W., Inc.*, 146 F.3d 666, 674 (9th Cir. 1998); *e.g., Va. Mason Hosp. v. Wash. State Nurses Ass'n*, 511 F.3d 908, 917-18 (9th Cir. 2007); *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 430 (9th Cir. 1983).

Cubic repeats its arguments that MOD is an agency of a rogue state and it would have been "illegal" to pay the ICC Award; and it opposed the petition to confirm the arbitration award on reasonable grounds articulated in the dissent by one arbitrator. In sum, Cubic argues the facts are not exceptional and do not justify the penalty of shifting attorney's fees. *Beaudry Motor Co. v. Abko Props., Inc.*, 780 F.2d 751, 756 (9th Cir. 1987).

The Court rejects these arguments for the same reasons stated above. Cubic's opposition to confirmation of the award was weak, and Cubic raised entirely new arguments on appeal. *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Williams Controls, Inc.*, 570 F. Supp. 2d 1273, 1279 (N.D. Cal. 2008) (awarding

legal fees when debtor forced creditor to expend resources to litigate and debtor raised issues that lacked support in the case law). The United States' Amicus brief did not support Cubic's interpretation that the sanctions regulations prevented it from complying with the ICC Award. Depending upon the time of payment, the Ninth Circuit held that Cubic could have paid the award directly to MOD under the general licenses or merely by obtaining a specific license to deposit the funds into a blocked account. Instead, the record shows that Cubic simply ignored the validity of the Arbitration Award and sought to avoid payment.

Whether to award attorney's fees properly focuses on Cubic's conduct in relation to the arbitration award. The record shows that MOD tried to settle the dispute informally before it filed the arbitration claim, before it pursued a claim with the Iran–United States Claims Tribunal, and after the ICC issued its final award but Cubic remained silent. Amirmoezi Decl. ¶¶ 4-9; Kerekes Decl. ¶ 3 & Ex. 3 §§ 10.6, 10.8. Cubic's conduct amounts to an "unjustified refusal to abide by an arbitrator's award" and "frivolous dilatory tactics." *Vaughan*, 369 U.S. at 530-31; *Sheet Workers*, 84 F.3d at 1192; *Int'l Union of Petroleum & Indus. Workers*, 707 F.2d at 430.

Fees for the appeal are appropriate because Cubic's position was based on conduct unrelated to the arbitration proceedings and events that occurred after the ICC issued its decision. *Wellman*, 146 F.3d at 674; *Va. Mason Hosp.*, 511 F.3d at 917-18.

Cubic does not object to the amount of fees requested and the Court's independent review establishes that the request is fair and reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The three attorneys who staffed the case request rates of between $100 and $350 per hour. The Court's review shows that counsel have filed cogent, concise, and intelligent arguments in all proceedings. MOD was successful. The rates are appropriate.

The total number of billed hours is reasonable given the complexity of the legal issues. Kerekes Supp. Decl. Exs. 6-8. In particular, MOD devoted time to defend against Cubic's reliance on the financial sanctions regulations and there is very little case authority

on those provisions. For the proceedings to confirm the arbitration award and seek fees and interest, one attorney billed 153.3 hours ($34,582.50) and his co-counsel seeks $9,520 for the same time period. All three attorneys performed some work on the appeal, collectively devoting approximately 191 hours, which includes appearing for oral argument and preparing supplemental briefs.

On remand, counsel have billed just over one hundred hours to prepare these motions and during the course of several conferences and miscellaneous matters. For the most part, counsel exercised billing judgment by deducting time spent on unrelated case work. *Hensley*, 461 U.S. at 434. A review of Exhibit 8, however, shows that MOD seeks hours devoted to work issues related to the Lien Claimants between April 24, 2012 and June 18, 2012. The Court would deduct 22.2 hours; however, counsel did not include hours to prepare the opening and reply briefs on the attorney's fees motions in July and August 2012 or for the appearance at the hearing on September 24, 2012. *Rosenfeld v. S. Pac. Co.*, 519 F.2d 527, 530 (9th Cir. 1975). That time is recoverable and would take at least 18 hours, thus, the Court sua sponte reduces the request by 4.2 hours.

Accordingly, the Court grants MOD's motion for $131,083.50 in attorney's fees.

## Conclusion

Upon review of the briefs and governing legal authorities and having considered the arguments of counsel, the Court grants MOD's motion for prejudgment interest in the amount of $316,007.02. Postjudgment interest at a rate of 4.966% accrues on the $316,007.02 award from August 10, 1999 to the date of payment at a daily rate of $42.99. The Court grants MOD's motion for attorney's fees in the amount of $131,083.50. Cubic shall deposit the funds with Clerk of the Court in same account. *See* Docket No. 208.

IT IS SO ORDERED.

DATED: January 3, 2013

BARRY TED MOSKOWITZ, Chief Judge
United States District Court